CHRISTIAN E. PICONE, CA STATE BAR NO. 218275
MICHAEL J. CHENG, CA STATE BAR NO. 244414
BERLINER COHEN, LLP
TEN ALMADEN BOULEVARD
ELEVENTH FLOOR
SAN JOSE, CALIFORNIA 95113-2233
TELEPHONE: (408) 286-5800
FACSIMILE: (408) 998-5388
christian.picone@berliner.com
michael.cheng@berliner.com

ATTORNEYS FOR PLAINTIFF UNITED SITE SERVICE, INC.,
A DELAWARE CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED SITE SERVICES, INC., a Delaware Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>RONALD F. VALENTA, LARRY D. TASHJIAN, as Trustee of the Tashjian Family Trust, TIMOTHY NICOLETTI, WILLIAM H. QUIROS, as Trustee of the William H. Quiros Trust, TASHJIAN FAMILY LIMITED PARTNERSHIP, SERGIO DIEZ, ANDREW HARDING, MARC PEREZ, MARK C. KEITH, MARTI BRIMMER, and GENERAL FINANCIAL GROUP, INC.,<br><br>    Defendants. | CASE NO.<br><br>COMPLAINT FOR BREACH OF CONTRACT; JURY DEMAND |

Plaintiff UNITED SITE SERVICES, INC. alleges as follows:

## PARTIES

1. Plaintiff UNITED SITE SERVICES, INC., a Delaware corporation ("Plaintiff") is, and at all times mentioned herein was, a corporation organized under the laws of the State of Delaware, validly existing and in good standing with a principal place of business at 118 Flanders Road, Westborough, Massachusetts.

2. Defendant, RONALD F. VALENTA ("Valenta") is a resident of California or Hawaii, and at all times mentioned here was, a shareholder of S & S Portable Services, Inc., a Delaware corporation ("S & S").

3. Defendant LARRY D. TASHJIAN ("Tashjian") is a resident of California and is at least one of the Trustees of the Tashjian Family Trust, and is sued in his capacity as Trustee, and is, and at all times mentioned herein was, a shareholder of S & S on behalf of the Tashjian Family Trust.

4. Defendant TASHJIAN FAMILY LIMITED PARTNERSHIP ("Tashjian Partnership") is a limited partnership with its principal location in Pasadena California, and is, and at all times mentioned herein was, a shareholder of S & S.

5. Defendant TIMOTHY NICOLETTI ("Nicoletti") is a resident of New Jersey or Wisconsin, and at all times mentioned herein was, a shareholder of S & S.

6. Defendant WILLIAM H. QUIROS ("Quiros") is a resident of California, is the Trustee of the William H. Quiros Trust, and is sued in his capacity as Trustee, and is, and at all times mentioned herein was, a shareholder of S & S on behalf of the William H. Quiros Trust.

7. Defendant SERGIO DIEZ ("Diez") is a resident of California, and at all times mentioned herein was, a shareholder of S & S.

8. Defendant ANDREW HARDING ("Harding") is a resident of California, and at all times mentioned herein was, a shareholder of S & S.

9. Defendant MARC PEREZ ("Perez") is a resident of California, and at all times mentioned herein was, a shareholder of S & S.

10. Defendant MARK C. KEITH ("Keith") is a resident of California, and at all times mentioned herein was, a shareholder of S & S.

11. Defendant MARTI BRIMMER ("Brimmer") is a resident of California, and at all times mentioned herein was, a shareholder of S & S.

12. Defendants Valenta, Tashjian, Tashjian Partnership, Nicoletti, Quiros, Diez, Harding, Perez, Keith, and Brimmer are sometimes collectively referred to as "Sellers".

13. Defendant General Financial Group, Inc., a California corporation ("GFG") is, and at all times mentioned herein was, a corporation organized under the laws of the State of California, validly existing and in good standing with a principal place of business at 39 East Union Street, Pasadena, California.

14. The Sellers appointed GFG to be Sellers' Stockholder Representative to represent Sellers for all purposes in connection with the Holdback funds (as described *infra*).

15. Sellers and GFG are sometimes collectively referred to as "Defendants".

## VENUE AND JURISDICTION

16. Venue is proper in this Court because the written agreements (as described *infra*) that are the subject of this action were at least partially entered into and was performed in Los Angeles County, and because at least one of the defendants resides in Los Angeles County.

17. The relief sought herein is for specific performance to enforce Plaintiff's contractual rights to receive the Holdback funds.

18. Further, diversity jurisdiction exists because Plaintiff on the one hand is incorporated in Delaware and has its principle place of business in Massachusetts (see ¶1) and Defendants on the other hand have their principle place of business in California, and are citizens of California, Hawaii, New Jersey, and/or Wisconsin (see ¶¶2 through 13); and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs (see 28 U.S.C. § 1332(a)).

## GENERAL ALLEGATIONS

19. S & S was a business located in Los Angeles County. S & S provided temporary fences and portable restroom facilities to businesses and construction sites. Prior to the date of the written agreement at issue in this matter S & S was owned by Sellers.

20. On or about April 23, 2014, Plaintiff and Sellers entered into a written agreement (entitled Stock Purchase and Sale Agreement for the Purchase of All Outstanding Shares of S & S Portable Services, Inc. ("Sale Agreement")), under which Plaintiff purchased all outstanding shares of S & S stock from Sellers. In return for the purchase price Sellers were obligated to transfer all S & S shares of stock and all assets of S & S to Plaintiff without debt and liens whatsoever unless specifically enumerated in the Sale Agreement.

21. Under Section 5.22 of the Sale Agreement, Sellers represented to Plaintiff that S & S had:

> (P)roperly completed, and duly and timely filed, all material Tax Returns required to be filed by them, and all such Tax Returns were completed in all material respects.... Taxes and levies of every kind, character or description due and payable by S & S have been timely paid... S & S has not:... (iv) in the last six years taken any reporting position for which it does not have a reasonable basis. Each corporation comprising S & S has withheld and paid all Taxes required to be withheld and paid by it in connection with amounts paid or owing to any employee, independent contractor, creditor, stockholder or other third-party.

22. Plaintiff and Sellers created an escrow account for unexpected, unknown, or discovered debts, payments, and taxes that predated the Closing Date of the Sales Agreement but might arise or be discovered after the Closing Date. Under Section 3.04(b) of the Sale Agreement, Plaintiff and Sellers agreed that Plaintiff would deposit ten percent (10%) of the Gross Purchase Price into an escrow account ("Holdback").

23. The purpose of the Holdback was to provide at least partial offset for any indemnification claims made by Plaintiff against Sellers or any other offset Plaintiff may be entitled to under the terms of the Sale Agreement. Upon the expiration of the Holdback period, the balance not used for offset indemnification would be remitted to Sellers.

24. After the Closing Date, on January 19, 2015 Plaintiff notified GFG of a Claim Notice (a claim for indemnification) with a specific demand for immediate payment of $1,208,040. The claim related to taxes and penalties associated with underreporting taxes for tax years 2011 through 2014 associated with W-2 wages of $714,651; state and federal withholding tax liability for underreporting of wages of $436,969, and costs and accounting fees for amending four years of returns of $56,420 (collectively the "Tax Liability"), all of which was unknown to Plaintiff as of the Closing Date.

25. Specifically, Plaintiff sought indemnification and release of the Holdback for the Tax Liability and penalties associated with compensation paid by S & S to employees, independent contractors, and consultants (not the underlying compensation itself) which gave rise to employment related taxes for tax years 2011 through 2014. Sellers categorized payments to S & S's employees

for non-compete agreements, non-solicitation agreements, and auto reimbursement as payments to independent contractors or consultants, and therefore failed to withhold taxes connected with such compensation.

26. After the sale of S & S, Plaintiff as the sole owner of S & S was liable and responsible to pay the Tax Liability.

27. Plaintiff reasonably relied on the representations and the documentation presented to it by Sellers and Sellers' representatives. Further, Plaintiff was not in a position with the information provided to it to challenge or question the method in which S & S categorized its employees and independent contractors or consultants, or determine or understand whether S & S was adequately withholding taxes from wages, bonuses, or payments to employees or independent contractors. It was not until after the Closing Date that Plaintiff discovered the material inaccuracy and material untruth of S & S's method of reporting and withholding taxes associated with certain compensation.

28. On February 24, 2015, Sellers through GFG objected to and repudiated Plaintiff's Claim Notice and refused to consent to indemnify Plaintiff or release the Holdback to Plaintiff.

29. Sellers have breached the Sale Agreement by refusing to indemnify Plaintiff for the Tax Liability. Specifically, Sellers are obligated to indemnify Plaintiff for taxes imposed upon Plaintiff for any Pre-Closing Tax Period, which include returns filed for tax years 2011 through 2014.

> The Sellers will be liable for and pay, and will indemnify the Buyer Group against, (i) all Taxes imposed on S & S, or for which S & S may otherwise be liable for any Pre-Closing Tax Period; provided, however, that with respect to federal and state income taxes for any Pre-Closing Tax Period the Sellers will be liable for and pay, and will indemnify the Buyer Group against, (i) the difference, if any, between (A) all federal and state income taxes imposed on S & S for any Pre-Closing Tax Period for which S & S is liable and (B) federal and state income taxes accrued by S & S for any Pre-Closing Tax Period; and (ii) Taxes arising as a result of any breach of the representation contained in Section 5.22; provided, however, that the Sellers will be liable only to the extent that such Taxes exceed the amount, if any, reserved for such Taxes on the face of the Closing Balance Sheet and exceed any tax benefit received by Buyer as a result of any adjustment giving rise to such tax liabilities. ... (Sale Agreement Section 9.07)

///

30. Plaintiff is entitled to recover its legal fees pursuant to the Sale Agreement.

> In the event any Party brings suit or institutes arbitration proceedings to construe or enforce the terms hereof, or raise this Agreement as a defense in a suit or arbitration proceeding brought by another Party, the prevailing Party in such suit or arbitration proceeding is entitled to recover its attorneys' fees and expenses. (Sale Agreement Section 10.12)

31. In addition to entering into the Sales Agreement, on or about April 23, 2014, Plaintiff, U.S. Bank National Association, S & S, and GFG entered into a second written agreement (entitled Escrow Agreement ("Escrow Agreement")). On information and belief, Sellers provided authority to GFG to act as Sellers' Stockholders Representative to represent Sellers for all purposes in connection with the Holdback funds deposited with Escrow Agent U.S. Bank National Association.

32. The purpose of the Escrow Agreement was to detail the process to release the Holdback funds to Sellers upon the expiration of potential statute of limitations or to release the Holdback funds to Plaintiff upon notice of unexpected, unknown, or discovered debts, payments, and taxes that predated the Closing Date of the Sales Agreement but might arise or be discovered after the Closing Date or Sellers, such as the Tax Liability.

33. GFG has breached the Escrow Agreement by refusing to release to Plaintiff $1,208,040 held in the escrow account (Holdback) for the Tax Liability. Specifically, GFG is obligated to release the funds upon receipt of a valid Claim Notice.

> If the Buyer elects to assert a claim for indemnification (and "Indemnity Claim"), it must (i) give written notice of such claim (a "Claim Notice") to the Escrow Agent and the Stockholders (GFG) prior to the expiration of the Escrow. Such Claim Notice shall include a reasonably detailed description of the claim and the basis therefore and the amount, if known, asserted by Buyer for such claim (including, if appropriate, an estimate of all costs and expenses reasonably expected to be incurred by the Buyer by reason of such claim)… (Escrow Agreement Section 6 (a).)

///

///

///

///

///

## FIRST CAUSE OF ACTION

### (Breach of Contract-Sellers)

34.  Plaintiff hereby incorporates Paragraphs 1 through 33 of this Complaint as though fully set forth herein.

35.  Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Sale Agreement, as well as all addendums and amendments thereto.

36.  Pursuant to the Sale Agreement (including all addendums and amendments thereto) Sellers were required to indemnify Plaintiff and/or to release any amounts necessary in the Holdback for payment of any tax liability related to any Pre-Closing Tax Period.

37.  Sellers breached the Sale Agreement by failing to indemnify Plaintiff and/or consent to the release of Holdback funds to Plaintiff sufficient to satisfy the costs associated with the tax liability related to any Pre-Closing Tax Period.

38.  As a result of the aforementioned breach, Plaintiff has suffered damages in an amount to be proven at trial but not less than $1,208,040.

## SECOND CAUSE OF ACTION

### (Breach of Contract-Sellers)

39.  Plaintiff hereby incorporates Paragraphs 1 through 33 of this Complaint as though fully set forth herein.

40.  Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Sale Agreement, as well as all addendums and amendments thereto.

41.  Sellers breached the Sale Agreement by refusing to consent to the release of Holdback funds sufficient to satisfy the Tax Liability, including refusing to take all steps necessary (including presenting consents or instructions) to direct the escrow holder (US Bank National Association) to release the Holdback to Plaintiff.

42.  As a result of the aforementioned breach Plaintiff has suffered damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### (Breach of Contract-GFG)

43. Plaintiff hereby incorporates Paragraphs 1 through 33 of this Complaint as though fully set forth herein.

44. Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Escrow Agreement. Specifically, Plaintiff deposited a portion of the purchase price into an escrow account (Holdback); notified GFG within nine months of signing the Escrow Agreement that Plaintiff was entitled to $1,208,040 from the Holdback for the Tax Liability; and demanded payment.

45. GFG breached the Escrow Agreement in that upon receipt of a valid demand it refused to release the Holdback to satisfy the Tax Liability, including refusing to take all steps necessary (including presenting consents or instructions) to direct the Escrow Holder, U.S. Bank National Association, to release the Holdback to Plaintiff.

46. As a result of the aforementioned breach Plaintiff has suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For compensatory damages in the sum to be determined at trial but at least $1,208,040;

2. For specific performance, namely directing Sellers to consent and to take all actions necessary to the release of Holdback to satisfy the Tax Liability and all other costs and expenses associated therewith;

3. For specific performance, namely directing GFG to consent and to take all actions necessary to the release of Holdback to satisfy the Tax Liability and all other costs and expenses associated therewith

4. For damages including indemnification for the Tax Liability at an amount to be proven at trial;

5. For prejudgment interest as provided by law;

6. For attorneys' fees as provided by the Sale Agreement;

7. For costs of suit incurred herein; and

8. For such other and further relief as the Court deems just and proper.

DATED: APRIL 20, 2018                BERLINER COHEN, LLP


BY: /s/ *CHRISTIAN E. PICONE*
CHRISTIAN E. PICONE
MICHAEL J. CHENG
ATTORNEYS FOR PLAINTIFF UNITED SITE SERVICES, INC.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: APRIL 20, 2018                BERLINER COHEN, LLP


BY: /s/ *CHRISTIAN E. PICONE*
CHRISTIAN E. PICONE
MICHAEL J. CHENG
ATTORNEYS FOR PLAINTIFF UNITED SITE SERVICES, INC.